## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

MICAH M. BYAS                                                              PLAINTIFF

v.                                         CIVIL ACTION NO. 5:16CV-121-TBR

COMMONWEALTH OF KENTUCKY *et al.*                      DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Micah M. Byas[1] filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, the action will be dismissed.

### I.

Plaintiff names numerous Defendants. He sues the following governmental entities: Commonwealth of Kentucky; Ballard County Court; Carlisle County Court; Graves[2] County Court; Ballard County Board of Education; Ballard County Detention Center (BCDC); Cabinet for Health and Family Services (CHFS); and the Department of Public Advocacy (DPA). He sues the following Defendants in their official capacity only: Leigh Ann Wiggins, a CHFS supervisor; and Vickie Hayden, Ballard County Attorney. He sues the following Defendants in both their individual and official capacities: Erica Hobbs-Mathis, a CHFS social service worker; Ashlee Richardson, a CHFS social service clinician; Unknown Secretary at Ballard County Board of Education; Kevin Hoskins, Carlisle District/Circuit Court Clerk; Amanda Brahnam, Assistant Ballard County Attorney; Donnie Hall, Ballard County Jailer; Christina Harvell, a BCDC lieutenant; Michael Hogancamp, Carlisle County Attorney; Timothy A. Langford,

---

[1] At the time Plaintiff filed his complaint, he was incarcerated in the Ballard County Detention Center. Shortly thereafter, he filed a notice of change of address indicating his release from incarceration.

[2] Plaintiff spells this Defendant as "Grave." The Court takes judicial notice, however, of the fact that the proper spelling of this Kentucky county is "Graves."

Ballard and Carlisle Circuit Court Judge; Angela Troutman, attorney at Public Advocacy of Paducah; and an Unknown Defendant at the Graves County Circuit Court.

Plaintiff alleges various incidents involving Defendants that occurred primarily in 2015 and 2016. He also mentions an incident occurring in 2002. These incidents will be detailed greater when the Court performs its analysis of Plaintiff's claims later in this Memorandum Opinion. *See* Section III.

As relief, Plaintiff seeks compensatory and punitive damages and the following injunctive relief: "Purge and Educate all Kentucky agencies of discrimination."

**II.**

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the complaint under 28 U.S.C. § 1915(e). *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. *Claims against the County Defendants*

The claims against BCDC are actually claims against Ballard County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."); *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). Ballard County Board of Education, as a division of local government,[3] may be sued directly. *Banks v. Breathitt Cty. Bd. of Educ.*, 925 F. Supp. 2d 856, 860 (E.D. Ky. 2013) (citing *Memphis Police Dep't v. Garner*, 471 U.S. 1 (1985)).

Further, because "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)), Plaintiff's official-capacity claims against the Unknown Secretary of the Ballard County Board of Education are actually against the Board, and the official-capacity claims against BCDC Jailer Hall and Lt. Harvell are actually against Ballard County.

When a § 1983 claim is made against a municipality or its school board, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of*

---

[3] *See, e.g.*, *Baar v. Jefferson Cty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 n.3 (W.D. Ky. 2010), *aff'd*, 476 F. App'x 621 (6th Cir. 2012) (indicating that in a § 1983 suit, the Jefferson County Board of Education "is deemed a division of local government, not a department of state government") (citing *Ghassomians v. Ashland Indep. Sch. Dist.*, 55 F. Supp. 2d 675, 682 (E.D. Ky. 1998)).

*Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)); *see also Richardson v. Bd. of Educ. of Jefferson Cty. Kentucky*, No. 3:04-CV-386R, 2006 WL 2726777, at *7 (W.D. Ky. Sept. 22, 2006) ("A municipality or school board may be held accountable for the actions of their employees only if these actions stem from officially executed policy, or the toleration of a custom that leads to, causes, or results in the deprivation of a constitutionally protected right.") (citations omitted).

      Here, Plaintiff fails to allege a policy or custom of Ballard County or the Board of Education that caused his alleged harm. For this reason, the claims against BCDC and the Ballard County Board of Education and the official-capacity claims against the Unknown Secretary, Jailer Hall, and Lt. Harvell must be dismissed for failure to state a claim upon which relief may be granted.

***B. Claims against the Commonwealth of Kentucky, Ballard County Court,[4] Carlisle County Court, Graves County Court, CHFS,[5] and DPA[6] and the Official-Capacity Claims for Damages against the Commonwealth's Officers and Employees***

The Eleventh Amendment[7] "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993), unless Congress has validly abrogated the state's immunity or the state has waived its immunity. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003); *Alabama v. Pugh*, 438 U.S. 78l, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). The Eleventh Amendment, therefore, bars this § 1983 action against the Commonwealth of Kentucky, Ballard County Court, Carlisle County Court, Graves County Court, CHFS, and DPA.

"This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. at 169. Consequently, the official-capacity claims for damages against the following Defendants also are barred by the

---

[4] The Kentucky courts are a constitutional arm of government. *See* Ky. Const. § 109 ("The judicial power of the Commonwealth shall be vested exclusively in one Court of Justice which shall be divided into a Supreme Court, a Court of Appeals, a trial court of general jurisdiction known as the Circuit Court and a trial court of limited jurisdiction known as the District Court. The court shall constitute a unified judicial system for operation and administration.").

[5] CHFS is an agency of the Commonwealth of Kentucky, created and organized by Kentucky statute. *See* Ky. Rev. Stat. Ann. § 211.015.

[6] DPA is also an agency of the Commonwealth of Kentucky. *See* Ky. Rev. Stat. Ann. § 31.010 (establishing "as an independent agency of state government . . . the Department for Public Advocacy").

[7] The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the amendment does not address the possibility of suit against a state by one of its own citizens, unassailable case law has interpreted the amendment in such a way as to close that gap." *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

Eleventh Amendment: CHFS workers Hobbs-Mathis, Richardson, and Wiggins; Carlisle County Circuit/District Court Clerk Hoskins; Ballard County Attorney Hayden and Assistant County Attorney Brahnam; Carlisle County Attorney Hogancamp; Ballard and Carlisle Circuit Court Judge Langford; and the Unknown Defendant at the Graves County Circuit Court.

In addition, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, the claims against the Commonwealth of Kentucky, its courts, CHFS, DPA, and their officers and employees are barred by the Eleventh Amendment and fail to state a claim upon which relief may be granted.

### C. DPA Attorney Troutman

Plaintiff also fails to state a § 1983 claim against Defendant Troutman because his allegations are based upon her role of representing him in a criminal proceeding. While the DPA is an independent agency of state government, it is firmly established that a defense attorney, regardless of whether she is a public defender or private attorney, is not a state actor for purposes of § 1983. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."). Although an exception exists if a defense attorney has engaged in a conspiracy with state officials to deprive another of federal rights, *Tower v. Glover*, 467 U.S. 914, 920-23 (1984), Plaintiff makes no such allegation and, therefore, his claims against Defendant Troutman must be dismissed.

## D. Individual-Capacity Claims

### 1. CHFS Employees Hobbs-Mathis and Richardson

Plaintiff's allegations against these two Defendants are as follows:

> September 4, 2015 Commonwealth of Kentucky CHFS and Michelle Rene Key-Byas made a lot of false statements. But the one she made in her Response to Motion of Respondent For Joint Time-Sharing Custody and/or Visition disturbed me the most was stated in outline 11. After reading that I call CHFS September 9, 2005 to get my daughter the help she needed. Erica Hobbs-Mathis Social Service Worker Helped me until she talked to Michelle and immdiately started to show and react partisanly and perjudicely. All evidence can be seen or heard in court record and her own investigation That I had to call Ombudsman to find out why my case was not closed. Shortly after that call I got a letter January 6, 2016 stateing that allegation have been found to be unsubstantiated. 90 day pass the standerd 45 day rule. Equal protection from discrimination 5, 14 Amendment.
>
> November 4, 2015 Another case was open on me that Erica Hobbs-Mathis testified that she called in on me at my hearing. Ashlee Richardson instantly discrimanted me without even hear a word out of my mouth. I told her that I wanted to be treated fairly and equally on fact and not her creed and or personal doctrin. She responded in the manner as all racist do. By saying "you will." You can read her open record investigation. Had to call Ombudsman to find out why my case was not closed. Again shortly after the same call about Erica too. January 7, 2016 letter stated that allegation have been found to be unsubstantiated.
>
> \*\*\*\*\*
>
> Dec. 4, 2015 Leigh Ann Wiggins[8] was at my custody hearing and told me I had another case open on me the was called in on Nov 4, 2015. Is someone is goin to come talk to me since its almost 45 day until she will have to close the case. I let her know the way things are being done under her supervision seem odd to me. She assure me that her office will not be partial. Ashlee Richardson came and see me at my house and talked about my criminal past and then said that the case against you will be unsubstantiated. Veiw the open record she wrote. and the time. I call Leigh Ann Wiggins over and over again to ask he why the CHFS supervisor would up hold such action did not get a call back and that why I called Ombudsman to see if they would help me. She they did emailed Erica & Ashlee to find out why my cases was not close. the lady from Ombudsman

---

[8] Plaintiff sued Defendant Wiggins in her official capacity only.

> call me back the next day and both works said just behind. Leigh Ann Wiggins at last called me back and started to ask me something. I stop her and said Ombudsman gave me the answer I needed. bye. Equal protection from discrimination. 5, 14 amendment[.]

Plaintiff alleges discrimination. "The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

Here, Plaintiff describes no disparate circumstances. On two occasions, he broadly states, "Equal protection from discrimination." This is insufficient to state a constitutional claim. Elsewhere, as to Defendant Richardson, he alleges that she "instantly discrimanted me without even hear a word out of my mouth. I told her that I wanted to be treated fairly and equally on fact and not her creed and or personal doctrin. She responded in the manner as all racist do. By saying 'you will.'" These allegations also are insufficient to state an equal-protection claim as Plaintiff fails to show membership in a protected class or that he was treated differently than others similarly situated. Consequently, the equal protection claims against Defendants Hobbs-Mathis and Richardson will be dismissed for failure to state a claim upon which relief may be granted.

### 2. *Judge Langford*

As to Defendant Judge Langford, Plaintiff alleges that on March 9, 2016, on "Day two of my hearing," Judge Langford "said in open court on record. I see you as a pedophile and I need to know what you told the Judge when you pled guilt. I said back, I couldn't say anything because I didn't do anything. The rest is on the record." Plaintiff indicates that the "outcome was I receive limited supervised visitation. He did not care if I had sole custody of a 14 yrs old daughter I had since she was 4 yrs old." Plaintiff claims that Judge Langford "caught Petitioner

9

committing purgery over and over again. Plus said something about it but didn't do anything." Plaintiff alleges "Equal protection from discrimination, Substantiation 'Due' Process. 5, 14 Amendment."

In another section of the complaint, Plaintiff claims that on July 1, 2016, Judge Langford "gave 180 day for Contempt of Court." Plaintiff apparently was incarcerated in the BCDC as a result of the finding of contempt.

With regard to Plaintiff's claims against Defendant Judge Langford, judges are entitled to absolute immunity for actions arising out of all acts performed in the exercise of their judicial functions. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Judicial immunity is embedded in the long-established principle that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335 (1872)). The law is clear that a judge acting within the scope of his official duties and within his jurisdictional authority is absolutely immune from damages liability. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000); *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997); *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992). This immunity confers complete protection from a civil suit. *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995).

A judge is subject to liability only for non-judicial actions or for acts which were judicial in nature but were taken in the "clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. at 11-12; *Ireland v. Tunis*, 113 F.3d at 1440. Whether or not an act is judicial depends on the nature and function of the act. *Ireland v. Tunis*, 113 F.3d at 1440. Two factors are examined to perform this analysis. *Id*. at 1441. The Court must first determine whether the act is "a function

10

normally performed by a judge." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. at 362). The Court must also look at "whether the parties dealt with the judge in his or her judicial capacity." *Ireland v. Tunis*, 113 F.3d at 1441. Moreover, a judge acts in clear absence of all jurisdiction only if the matter acted upon is clearly outside the subject matter of his court. *Ireland v. Tunis*, 113 F.3d at 1441; *King v. Love*, 766 F.2d 962, 965-66 (6th Cir. 1985); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984). Acting in error, maliciously, or in excess of his authority is not enough. *Stump v. Sparkman*, 435 U.S. at 356.

The factors used for the functional analysis indicate that the alleged acts by Defendant Judge Langford were judicial in nature. He presided over the cases, ordered limited visitation, and found Plaintiff in contempt of court. These are actions normally performed by a judge, and he dealt with Plaintiff only in his judicial capacity. Further, the complaint gives no indication that Defendant Judge Langford lacked jurisdiction in presiding over Plaintiff's cases.

Consequently, the claims against Judge Langford are barred by judicial immunity and must be dismissed.

### 3. Prosecutors Brahnam and Hogancamp

Plaintiff complains that sometime in November 2015, with respect to a criminal case against him, "I stated that Ballard County Attorney Vickie Hayden[9] had a conflict in the [] case and requested Carlisle County Attorney Micheal Hogancamp prosecution the criminal summons; sign by Hon. Hunter B Whitesell." However, according to Plaintiff, on the next court date, on December 4, 2015, "Hayden offerd me a pley . . . How can Vickie Hayden offerd me a pleay and she has a conflict." He continues that on December 14, 2015, on the next court date, his public defender, Troutman, told him that "Amanda Brahnam offerded a deal and I should take it and I

---

[9] Plaintiff sued Defendant Hayden in her official-capacity only.

said No." Plaintiff further alleges that on July 18, 2016, Hogancamp "did show up for the first time and walked in and said ready for trial I said yes and a bench trial to but some new attorney said that not even got his first docket ask me to just take it and it will be easy on you if you did." Plaintiff claims that "The judge did not show up so my still waitting for justice[.]" Finally, he claims, "While this was going on [] I wanted to put charges on a gruop of people and Amanda Brahnam said there is no chargers to fit the crime.  that was a lie.  Back the County attorney in Paduach gave it to me."

Similar to the doctrine of judicial immunity, prosecutors are entitled to "absolute immunity from civil liability related to their performance of 'prosecutorial' functions.'" *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Id*. (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "[P]lea bargains are 'so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity.'" *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) (quoting *Cady v. Arenac Cty.*, 574 F.3d 334, 341 (6th Cir. 2009)). In addition, "deciding to initiate a prosecution is subject to absolute immunity." *Howell v. Sanders*, 755 F. Supp. 2d 789, 796 (E.D. Ky. 2010), *aff'd*, 668 F.3d 344 (6th Cir. 2012) (citing *Imbler*, 424 U.S. at 431). "As the line of absolute-immunity cases make[s] clear, . . . a prosecutor's allegedly improper motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state." *Cady v. Arenac Cty.*, 574 F.3d at 341.

Nothing in the complaint suggests that Defendants Brahnam and Hogancamp were acting in any capacity other than in their roles as advocates for the state in the judicial process.

Therefore, Plaintiff's claims against them are barred by prosecutorial immunity and will be dismissed.

### 4. Carlisle County Circuit/District Clerk Hoskins

Plaintiff alleges that he had to be at court on November 4, 2015.  He states, "I get there an Kevin Hoskins the Clerk to me I don't have to be there.  I told him that I'm stay until the Judge tell me different."  He continues, "The Judge came out and said . . . Mr. Byas You case has been moved to Ballard.  I don't know why and don't ask me why, and I will not be the Judge.  Have a good day.  a few days later I got in the mail Order to Transfer."

Plaintiff's allegations against Clerk Hoskins fail to state a constitutional claim.  Even if Plaintiff had stated a viable claim, Clerk Hoskins would be protected by the doctrine of quasi-judicial immunity, which "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune."  *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002) (two court clerks who did not provide prisoner with copies of previous filings and transcripts were entitled to quasi-judicial immunity).  For these reasons, the claims against Clerk Hoskins must be dismissed.

### 5. BCDC Jailer Hall and Lt. Harvell

At the time Plaintiff filed his complaint, he was incarcerated in BCDC.  He was released shortly thereafter.  Plaintiff alleges that while at the detention center, "I asked to sign up to go to the law library and it states Ballard County jail does not have a Law library. DOC Rules Pre Donnie Hall."  He further alleges, "I ask for mental Health care and Christina Harvell Lieutenant told me in front of Debora Smith.  If you don't want to hurt yourself or anyone esle you will be ok, and there is nothing to do for you."

Regarding Plaintiff's claim that BCDC had no law library, prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, meaningful access will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered. *Id.* at 830-31; *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992). An inmate who claims his access to the courts was denied merely because he was denied access to the prison library, or certain books, fails to state a claim. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, a plaintiff must demonstrate an actual injury. *Id.* He must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Lewis v. Casey*, 518 U.S. at 356 (advising that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented").

Plaintiff fails to allege any injury to past or present litigation as a result of not having access to a law library at BCDC. He, therefore, fails to state a constitutional claim.

As to Plaintiff's claim that he was denied mental health care, prison officials violate a prisoner's civil rights under the Eighth Amendment if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "An Eighth Amendment claim has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001). To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious

harm.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[T]he evidence need only show that 'the medical need at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 834). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03.

Here, Plaintiff fails to allege facts indicating a serious medical need requiring mental health care, and he fails to allege any injury resulting from the alleged denial of treatment. For these reasons, Plaintiff fails to state an Eighth Amendment claim.

### 6. *Unknown Ballard County Board of Education Secretary*

Plaintiff claims that in September 2015 and April 2016, "Ballard County Middle school[10] secratary told and withheld information that would put me as a bad guy and Michelle as the good one. It is all on CHFS open record report. 5, 14, amendment."

This broad allegation against the Unknown Secretary wholly fails to state a constitutional claim upon which relief may be granted. The claims against this Defendant, therefore, must be dismissed.

### 7. *Unknown Individual Employed at the Graves County Circuit Court*

While Plaintiff lists this Unknown Defendant in the "Parties" section of the complaint form, he fails to allege facts against such an individual. He does allege that in 2002, "Grave County charge me with 5 felony." He states, "I was looking a my history of crime and it said

---

[10] While Plaintiff names a secretary of the Ballard County Board of Education as a Defendant in the "Parties" section of the complaint form, he fails to make any allegations against a secretary for the Board. The Court presumes that the secretary of the Ballard County Middle School is the same secretary Plaintiff is referring to in the "Parties" section.

that I was in jail for 2 days and that is so untrue because I was lock up in May of that same year and not release until Oct. that same year." He alleges that "they change the paper work because I stated in court that if this court do not find me guilty of these charges I will sue Commonwealth of Kentucky. So if I did sue I was only in jail for 2 day Have Commonwealth of Kentucky teneder to prove this a to show how much they lied. 5, 14 amendment."

Even construing these allegations in a light most favorable to Plaintiff, they are insufficient to state a claim of constitutional magnitude, and he fails to allege any harm as a result of the erroneous paperwork. The claims against the Unknown Individual, therefore, must be dismissed for failure to state a claim upon which relief may be granted.

## IV.

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date:


cc: Plaintiff, *pro se*
       Defendants
4413.005